# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **RYAN JOSHUA DIAZ** | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 4:24-cv-00486** |
| | § | |
| **v.** | § | |
| | § | |
| **WASTE CONNECTIONS** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant*. | § | |

## DEFENDANT WASTE CONNECTIONS US, INC.'S OPPOSED MOTION TO DISMISS, OR, IN THE ALTERNATIVE STAY, IN FAVOR OF ARBITRATION

Respectfully submitted,

/s/ *David M. Gregory*
David M. Gregory
Southern District of Texas No. 24397
Texas State Bar No. 24007274
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, Texas 77002
(713) 226-1200 (Telephone)
(713) 223-3717 (Facsimile)
dgregory@lockelord.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT WASTE CONNECTIONS US, INC.**

Jeffrey M. McPhaul
Southern District of Texas No. 1129775
Texas State Bar No. 24069018
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, Texas 77002
(713) 226-1200 (Telephone)
(713) 223-3717 (Facsimile)
jmcphaul@lockelord.com

**OF COUNSEL FOR DEFENDANT WASTE CONNECTIONS US, INC.**

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Summary of Argument | 4 |
| II. | Statement of the Issue | 5 |
| III. | Nature and Stage of the Proceeding | 5 |
| IV. | Relevant Facts | 5 |
| | A. The terms of the binding Arbitration Agreement signed by Diaz. | 5 |
| | B. Diaz agreed to be bound by the Arbitration Agreement. | 7 |
| | C. Diaz refuses to comply with the Arbitration Agreement. | 9 |
| V. | Argument and Authorities | 10 |
| | A. The Federal Arbitration Act applies to the Arbitration Agreement. | 10 |
| | B. The Arbitration Agreement is valid and must be enforced. | 11 |
| | C. Diaz's claims fall within the scope of the Arbitration Agreement. | 14 |
| | D. The Court should dismiss Diaz's claims with prejudice to be pursued in arbitration, or, at minimum, stay the case and compel arbitration. | 15 |
| VI. | Conclusion and Prayer for Relief | 15 |

137221133v.1

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .................................................................................................... 10, 11

*Ascension v. Thind Hotels, LLC*,
2010 WL 519695 (S.D. Tex. Feb. 8, 2010) ......................................................................... 14

*Banc One Acceptance Corp. v. Hill*,
367 F.3d 426 (5th Cir. 2004) ............................................................................................. 11

*In re Capco Energy, Inc.*,
669 F.3d 274 (5th Cir. 2012) ............................................................................................. 11

*In re Dallas Peterbilt, Ltd., L.L.P.*,
196 S.W.3d 161 (Tex. 2006) ........................................................................................ 12, 13

*In re Odyssey Healthcare, Inc.*,
310 S.W.3d 419 (Tex. 2010) ............................................................................................. 13

*In re Polymerica, LLC*,
296 S.W.3d 74 .................................................................................................................... 12

*In re Tenet Healthcare*,
84 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ......................................... 13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................................... 10

*Edwards v. Doordash, Inc.*,
888 F.3d 738 (5th Cir. 2018) ............................................................................................. 10

*Gallagher v. Vokey*,
860 Fed. Appx. 354 (5th Cir. 2021) ................................................................................... 11

*Garrett v. Hooters of Am., LLC*,
2022 WL 347619 (S.D. Tex. Jan. 5, 2022) ......................................................................... 13

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ............................................................................................... 5

*Prudential Sec. Inc. v. Marshall*,
909 S.W.2d 896 (Tex. 1995) .............................................................................................. 14

*Quinn v. EMC Corp.*,
109 F. Supp. 2d 681 (S.D. Tex. 2000) ............................................................................... 13

137221133v.1

*Smith, v. Westwood Auto Sales, LLC*,
    2023 WL 9234502 (S.D. Tex. Sept. 28, 2023) .................................................................................. 14

**Statutes**

9 U.S.C.A. §§1, et seq. ............................................................................................................... 10, 15

## DEFENDANT'S OPPOSED MOTION TO DISMISS, OR, IN THE ALTERNATIVE STAY, IN FAVOR OF ARBITRATION

Plaintiff Ryan Diaz ("Diaz") signed two separate arbitration agreements[1] with his former employer Waste Connections US, Inc.[2] ("Waste Connections"). Among other things, Diaz agreed to arbitrate all "statutory claims for harassment, retaliation and discrimination" and "claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance." Waste Connections asks this Court to hold Diaz to the parties' agreement to arbitrate by dismissing, or in the alternative staying, this case in favor of arbitration.

### I.  Summary of Argument

1)   Diaz expressly agreed to the Arbitration Agreement in connection with his application and employment with Waste Connections. The Arbitration Agreement is bilateral, supported by consideration, and satisfies the elements of a valid contract under Texas law. Diaz's claims fall squarely within the scope of the Arbitration Agreement. Diaz's claims under the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) are expressly covered by the Arbitration Agreement, which extends to, among other things, all "statutory claims for harassment, retaliation and discrimination" and "claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance." Given the plain language of the Arbitration Agreement, as well as the strong presumption under federal law in favor of arbitration, the Court should dismiss this case with prejudice, or stay it, in favor of arbitration.

---

[1]   These two identical arbitration agreements (collectively referred to as the "Arbitration Agreement") were agreed to by Diaz both when he initially applied for employment and when he later sought a different position at the company, as further detailed in this motion.

[2]   Diaz improperly sued "Waste Connections," which is neither an existing legal entity nor his former employer. Rather than contest his improper pleading and service, both of which are defective and subject to challenge, Diaz's actual employer, Waste Connections US, Inc., appears via this pleading and seeks to require Diaz to bring his claims in the correct forum (which to date, he has refused to do).

## II.     Statement of the Issue

2)     The sole issue to be decided by the Court is whether to enforce the parties' agreement to arbitrate and require Diaz to pursue his claims in arbitration. The Court's decision is reviewed *de novo*. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009).

## III.    Nature and Stage of the Proceeding

3)     This is an employment case involving claims under the FMLA and the ADA.[3] Despite agreeing to arbitrate all such disputes, the Plaintiff, Ryan Diaz, filed this lawsuit on February 9, 2024 against a non-existent entity, "Waste Connections,"[4] rather than his actual former employer. The Court set the parties' Initial Conference for August 19, 2024.[5]

## IV.     Relevant Facts

### A.    The terms of the binding Arbitration Agreement signed by Diaz.

4)     The Waste Connections family of companies provides waste collection, transfer, recycling and disposal services to over seven million residential, commercial and industrial customers located across approximately 45 states in the U.S., as well as in six provinces of Canada.[6] Various operating subsidiaries and affiliates provide services in multiple states, using equipment bought and delivered from suppliers located across the United States, and advertise the company's business on the internet and through other interstate advertising mechanisms.[7] Mr. Diaz's former employer, Waste Connections US, Inc., is an intermediate parent entity within the company's

---

[3]     *See* Document 1 at p. 3.

[4]     *See* Document 1.

[5]     *See* Document 2.

[6]     Exhibit 1, Declaration of David Parrish (referred to as "Parrish Dec.") at ¶3. Pursuant to this Court's procedures, Waste Connections has included the exhibits supporting this motion both as attachments hereto, and as part of a separate appendix containing the unpublished authorities referenced in this motion.

[7]     *Id.*

ownership structure, which provides shared administrative services to the various operating subsidiaries across the U.S., including IT services, which was Mr. Diaz's department. [8]

5) The Arbitration Agreement sets forth the sole procedure for resolving employment-related disputes between Waste Connections and its subsidiaries on the one hand, and its current and former employees and job applicants on the other hand.[9] Under the Arbitration Agreement's terms, Waste Connections and its employees and job applicants are bilaterally required to arbitrate "any and all claims and disputes . . . between" them "arising out of or related to" a person's "employment and/or the termination of [that person's] employment," including all "statutory claims for harassment, retaliation and discrimination" and "claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance."[10] The Arbitration Agreement is bilateral in nature and imposes on the parties a mutual obligation to submit disputes to arbitration.[11] In addition, the Arbitration Agreement provides that questions of arbitrability are for an arbitrator to decide.[12]

6) The Arbitration Agreement provides that it "shall be construed, interpreted and its validity and enforceability determined, in accordance with the Federal Arbitration Act," and that arbitrations will be conducted "in accordance with the then current Employment Arbitration Rules of the American Arbitration Association" (the "AAA").[13] The Arbitration Agreement explains

---

[8] *Id.*

[9] *See* Exhibit 1-A, Arbitration Agreement at pp. 2, 7 (stating all covered claims "shall be decided by an arbitrator through arbitration and not by way of court or jury trial").

[10] *Id.*

[11] *See Id.* (stating "The Company and I mutually understand, contract and agree…").

[12] *See Id.* ("covered disputes include any claim or controversy regarding this Arbitration Provision or any portion of the Arbitration Provision or its interpretation, validity, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Arbitration Provision or any portion of it is void or voidable, with the exception noted in the Class Action Waiver below").

[13] *Id.* at pp. 2, 7.

where applicants and employees can obtain and review the AAA's Employment Arbitration Rules.[14] By specifying the AAA's Employment Arbitration Rules to govern proceedings, the Arbitration Agreement provides for (A) the appointment of a neutral arbitrator; (B) the use of varied discovery mechanisms by the parties; (C) entry of a final written and reasoned award; and (D) the availability of the same forms of "remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs."[15] In addition, Waste Connections is responsible for all administrative fees, as well as the fees and expenses of the arbitrator beyond the initial $300 filing fee by the employee.[16]

### B. Diaz agreed to be bound by the Arbitration Agreement.

7) Diaz first applied online for a position as a Field Technician in Waste Connections' IT department on or about February 12, 2018.[17] To apply, Diaz was required to first create an account via a third-party platform, Workday, using his personal e-mail address.[18] As an additional security measure, the Workday platform required Diaz to create a unique personal password of his own choosing.[19] Waste Connections does not have access to the accounts of applicants like Diaz and does not know the passwords they have chosen.[20]

---

[14] *Id.*

[15] *See* AAA Empl. Arb. Rules 9, 12, 39(c)-(d), available at https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

[16] *See* AAA Employment/Workplace Fee Schedule, available at https://www.adr.org/sites/default/files/Employment_Fee_Schedule.pdf.

[17] Exhibit 1, Parrish Dec. at ¶7.

[18] *Id.* at ¶¶ 4,7.

[19] *Id.* at ¶4.

[20] *Id.* at ¶5.

8) Diaz was then directed to a screen explaining the terms and conditions of applying for the position, which he was required to review and acknowledge.[21] This included the Arbitration Agreement.[22] Diaz was presented with a screen containing the full text of the five paragraphs of the Arbitration Agreement.[23] To complete this step of the application process, Diaz was required to affirmatively click a button verifying his agreement to be bound by the Arbitration Agreement.[24] There was no time limit imposed on him to do so, and Diaz was free to save his in-progress application and leave the screen to seek advice or counsel from his own advisors, and then return to the application before finally submitting it for consideration.[25]

9) To complete and submit his application, Diaz was required to affirmatively click yet another button, entitled "I Agree."[26] Before given the option to do so, however, Diaz was cautioned that by clicking "I Agree," he would be (A) declaring that he had read and agreed to the terms and conditions; (B) was authorizing the use of "electronic signature submittal to serve as my legal signature"; and (C) agreeing "to be bound by the Arbitration Provision."[27] Waste Connections' business records reveal that Diaz clicked "I Agree," and thereby acknowledged and agreed to the Arbitration Agreement, on February 12, 2018 at approximately 7:49 a.m.[28]

10) No one at Waste Connections has the capability to complete the application forms on behalf of applicants, such as Diaz.[29] The system does not permit anyone other than the user with the

---

[21]   *Id.* at ¶8

[22]   *Id.* at ¶¶ 8-9.

[23]   *Id.* at ¶9; *see generally* Exhibit 1-A, Arbitration Agreement.

[24]   Exhibit 1, Parrish Dec. at ¶9.

[25]   *Id.*

[26]   *Id.*

[27]   *See* Exhibit 1-A at pp. 4, 9 (including language describing the effect of clicking "I Agree").

[28]   Exhibit 1, Parrish Dec. at ¶9; *see* Exhibit 1-A, Arbitration Agreement at p. 1 (reflecting time of agreement).

[29]   Exhibit 1, Parrish Dec. at ¶¶5-6.

applicant's personal email address and unique password to enter the application account to review the forms and agree to them.[30] Waste Connections is only permitted to view "read-only" copies of an applicant's forms after the applicant has completed and submitted the forms by affirmatively clicking "I Agree" at the end of the application process.[31] In "read-only" mode, an applicant's forms cannot be modified, and their personal information—including their unique password—is protected and hidden from view.[32]

11) Similarly, Diaz later applied for another position as a Jr. Application Developer on or about September 18, 2022, via Waste Connections' website careers.wasteconnections.com.[33] Diaz followed the same process and procedures as detailed above for his initial application to sign and agree to the Arbitration Agreement a second time.[34] Waste Connections' business records reveal that Diaz clicked "I Agree" on the Arbitration Agreement (for a second time), and thereby acknowledged and agreed to the Arbitration Agreement, on September 18, 2022 at approximately 4:44 p.m.[35]

    **C.**    **Diaz refuses to comply with the Arbitration Agreement.**

12) Wholly ignoring the Arbitration Agreement, Diaz filed this lawsuit on February 9, 2024 alleging claims under the Family Medical Leave Act and the Americans with Disabilities Act.[36] Waste Connections' counsel contacted Diaz on or about April 15, 2024, to discuss the Arbitration

---

[30]    *Id.*

[31]    *Id.* at ¶6.

[32]    *Id.*

[33]    *Id.* at ¶10.

[34]    *Id.*

[35]    *Id.*; *see* Exhibit 1-A Arbitration Agreement at p. 6 (reflecting time of agreement).

[36]    *See* Document 1 at p. 3.

Agreement and Diaz's contractual agreement to arbitrate—not litigate—his claims.[37] Waste Connections' counsel also provided Diaz with a copy of Diaz's Arbitration Agreement in this initial communication.[38]

13) Waste Connections' counsel followed up multiple times regarding whether Diaz would comply with the Arbitration Agreement.[39] To date, Diaz has failed to comply with the Arbitration Agreement. As a result, Waste Connections requests that this Court dismiss, or alternatively stay, Diaz's case in favor of arbitration.

## V.     Argument and Authorities

14) The Federal Arbitration Act (FAA) applies to all contracts "involving commerce." 9 U.S.C. § 2; *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995) ("the word 'involving' is broad and is indeed the functional equivalent of 'affecting'" interstate commerce). Upon a showing that (1) an agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue, the FAA requires the court to enforce the arbitration agreement in accordance with its terms. 9 U.S.C. § 2; *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (noting the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). There is a valid agreement to arbitrate, which plainly encompasses the claims in this case. Plaintiff must proceed in arbitration, if at all.

### A.     The Federal Arbitration Act applies to the Arbitration Agreement.

15) The Arbitration Agreement specifies it is governed by the Federal Arbitration Act (FAA). 9 U.S.C.A. § 2 (FAA deems arbitration provisions in contracts involving interstate commerce

---

[37]     *See* Ex. 2, E-mail dated April 15, 2024 from Waste Connections' counsel to Diaz.
[38]     *See Id.*
[39]     *See* Ex. 3, E-mails dated April 16 and 17, 2024 from Waste Connections' counsel to Diaz.

valid).[40] Consistent with the parties' express agreement, the FAA is implicated because Waste Connections' business activities regularly and consistently involves commerce: via its various operating subsidiaries and affiliates, Waste Connections provides waste collection, transfer, recycling and disposal services to over seven million residential, commercial and industrial customers located across approximately 45 states in the U.S., as well as in six provinces of Canada, using equipment bought and delivered from suppliers located across the United States.[41] The company also advertises its business on the internet and through other interstate advertising mechanisms.[42] Waste Connections US, Inc., an intermediate parent entity and Plaintiff's former employer, provides shared administrative services to the various operating subsidiaries located across the United States.[43]

16) The Arbitration Agreement involves interstate commerce and is covered by the FAA. *See e.g. Dobson,* 513 U.S. at 282 (finding an arbitration agreement involved commerce where one signatory was a "multistate" company, and some of the material used came from out of state).

### B.   The Arbitration Agreement is valid and must be enforced.

17) Whether there is a valid agreement between the parties is determined according to state law – in this instance Texas law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). In Texas, a "contract requires (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012). "Texas courts have consistently held that a

---

[40]   Ex. 1-A, Arbitration Agreement at pp. 2, 7.

[41]   Exhibit 1, Parrish Dec. at ¶3.

[42]   *Id.*

[43]   *Id.*

party's signature on a written contract is strong evidence that the party unconditionally assented to its terms." *Gallagher v. Vokey*, 860 Fed. Appx. 354, 358 (5th Cir. 2021) (citations and quotations omitted). "[A] signature—the authenticity of which had not been challenged—combined with an affidavit attesting to the authenticity of the signature based on personal knowledge was sufficient to prove the existence of an agreement to arbitrate." *Id.* (citing *Wright v. Hernandez*, 469 S.W.3d 744, 752–53 (Tex. App.—El Paso 2015, no pet.)).

18) In addition, "[a]n at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006). This is so even if the arbitration provision is not signed. *In re Polymerica, LLC*, 296 S.W.3d 74 (Tex. 2009).

19) Waste Connections made an offer to Diaz – specifically, the Arbitration Agreement was presented to Diaz by Waste Connections as part of his employment application process and was clearly captioned as an "Arbitration Provision."[44] Diaz was required to use his unique personal email address and create a unique password to create an applicant account, and Diaz was required to use his own unique email and password to access, complete and submit his own application on his behalf.[45] His log-in information was not available to, nor was his application file accessible for editing by, Waste Connections.[46]

20) Under these security protocols and functionalities, only Diaz or someone with his personal email address and self-selected password could complete the process and submit the application.[47]

---

[44] Exhibit 1, Parrish Dec. at ¶¶4-9; *see* Exhibit 1-A, Arbitration Agreement at pp. 2,7 (reflecting header of "Arbitration Provision").

[45] Exhibit 1, Parrish Dec. at ¶¶4-9;

[46] *Id.* at ¶¶ 4-6.

[47] *Id.*

Diaz was required to review and affirmatively "click through" it to continue with his application, and eventually Diaz also had to affirmatively click "I Agree" to submit his application.[48] By doing so, Diaz authorized his "electronic signature submittal to serve as [his] legal signature" and acknowledged his "agree[ment] to be bound by the Arbitration Provision."[49] Diaz repeated this process a second time later on in his employment, when he applied for a different position within the company.[50] This electronic offer, acceptance, and assent requires Diaz to arbitrate the claims in this case. *See Garrett v. Hooters of Am., LLC,* 2022 WL 347619, at *3 (S.D. Tex. Jan. 5, 2022) (enforcing arbitration agreed to electronically during application process).

21) In addition, Diaz accepted the Arbitration Agreement through his conduct. Diaz received notice of the Arbitration Agreement, at minimum, at the time of his original application.[51] He then worked for Waste Connections for over four years after such notice.[52] This is acceptance as a matter of law. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d at 163.

22) Lastly, the Arbitration Agreement is supported by valid consideration. In the Arbitration Agreement, both Waste Connections and Diaz jointly agreed to submit all disputes or claims to confidential binding arbitration.[53] Mutual promises to arbitrate disputes by an employer and an employee are sufficient consideration to support an arbitration agreement. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (orig. proceeding); *In re Tenet Healthcare,* 84

---

[48] *Id.* at ¶¶8-9.

[49] *Id.* at ¶¶8-9; *see* Exhibit 1-A at pp. 4, 9 (including language describing the effect of clicking "I Agree").

[50] Exhibit 1, Parrish Dec. at ¶-9.

[51] *Id.* at ¶7; *see* Exhibit 1-A, Arbitration Agreement at p. 1 (reflecting time of agreement).

[52] Exhibit 1, Parrish Dec. at ¶7.

[53] *See* Exhibit 1-A, Arbitration Agreement at pp. 2, 7 (stating "The Company and I mutually understand, contract and agree…").

13

S.W.3d 760, 766 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Quinn v. EMC Corp.,* 109 F. Supp. 2d 681, 683-84 (S.D. Tex. 2000).

23) Diaz and Waste Connections agreed to submit disputes such as this one to binding arbitration. The Court should enforce the parties' valid Arbitration Agreement and dismiss the case in favor of arbitration.

### C. Diaz's claims fall within the scope of the Arbitration Agreement.

24) "[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Ascension v. Thind Hotels, LLC,* 2010 WL 519695, at *5 (S.D. Tex. Feb. 8, 2010) (*citing Banc One*, 367 F.3d at 429). Because the Federal Arbitration Act strongly favors arbitration, "[a] court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

25) There is no real dispute that Diaz's claims against Waste Connections fall within the scope of the Arbitration Agreement. Indeed, the Arbitration Agreement expressly includes "statutory claims for harassment, retaliation and discrimination" and "claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance."[54] Diaz's claims under the FMLA and the ADA are expressly covered by the scope of the Arbitration Agreement.[55]

26) Given the scope of the parties' valid Arbitration Agreement which includes all Diaz's claims, Diaz's sole forum for his claims is in arbitration.

---

[54] Exhibit 1-A, Arbitration Agreement at pp. 2, 7.

[55] *See* Document 1 at p. 3.

### D. The Court should dismiss Diaz's claims with prejudice to be pursued in arbitration, or, at minimum, stay the case and compel arbitration.

27) When all claims at issue are subject to mandatory arbitration, courts have held dismissal to be proper in lieu of staying the proceedings. *See Smith, v. Westwood Auto Sales, LLC*, 2023 WL 9234502, at *3 (S.D. Tex. Sept. 28, 2023) ("[I]t is well established that courts in this Circuit should dismiss, rather than stay, litigation when arbitration will resolve all of the issues in dispute.") (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1991)). Because all of Diaz's claims fall squarely within the Arbitration Agreement and must be submitted to binding arbitration, the Court should dismiss Diaz's claims with prejudice.

28) At minimum, if the Court determines to retain this case on its docket, the Court should stay the case pending the arbitration proceedings and compel arbitration. *See* 9 U.S.C.A. § 3 (authorizing stay of litigation based on arbitration agreement).

## VI. Conclusion and Prayer for Relief

29) Diaz and Waste Connections mutually agreed to submit disputes such as this one to binding arbitration. The Court should enforce the parties' agreement. Defendant Waste Connections US, Inc. requests the Court to dismiss Diaz's claims with prejudice, so that they may be pursued in arbitration. In the alternative, if the Court decides not to dismiss Diaz's claims with prejudice, Waste Connections requests the Court to stay this litigation and compel the parties to arbitration pursuant to the Arbitration Agreement. Waste Connections further requests all relief, at law or in equity, to which it is justly entitled.

        Respectfully submitted,

        /s/ *David M. Gregory*
        DAVID M. GREGORY
        Southern District of Texas No. 24397
        Texas State Bar No. 24007274
        LOCKE LORD LLP
        600 Travis, Suite 2800
        Houston, Texas 77002
        (713) 226-1200 (Telephone)
        (713) 223-3717 (Facsimile)

        **ATTORNEY-IN-CHARGE FOR WASTE CONNECTIONS US, INC.**

**OF COUNSEL:**

JEFFREY M. MCPHAUL
Southern District of Texas No. 1129775
Texas State Bar No. 24069018
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, Texas 77002
(713) 226-1200 (Telephone)
(713) 223-3717 (Facsimile)

137221133v.1

CERTIFICATE OF CONFERENCE

      I hereby certify that Defendant's counsel conferred in good faith with Plaintiff Ryan Diaz, in compliance with this Court's procedures and the Local Rules for the Southern District of Texas. Defendant's counsel exchanged several e-mails during the week of April 15-19, 2024, requesting that Mr. Diaz agree to proceed to arbitration in compliance with the Arbitration Agreement between Mr. Diaz and Waste Connections US, Inc.  Mr. Diaz refused to do so.

                                        *Jeffrey M. McPhaul*
                                        Jeffrey M. McPhaul
                                        Attorney for Defendant

CERTIFICATE OF SERVICE

      I hereby certify that on this 25th day of April 2024, the foregoing document has been served on the Plaintiff pursuant to the Federal Rules of Civil Procedure:

                                        *Jeffrey M. McPhaul*
                                        Jeffrey M. McPhaul
                                        Attorney for Defendant